UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| SARAH WEBER BRISBIN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 04-0643 (RCL) |
| | ) | |
| WASHINGTON SPORTS AND ENTERTAINMENT, LTD, t/a MCI CENTER, et al, | ) ) ) | |
| | ) | |
| Defendants. | ) ) | |

# MEMORANDUM OPINION

This negligence case comes before the Court on a Renewed Motion [38] for Summary Judgment filed on behalf of defendant Washington Sports and Entertainment, LTD, ("Washington Sports"). Plaintiff filed a Second Amended Complaint alleging one count of negligence against the defendant,[1] claiming that plaintiff was a business invitee to whom Washington Sports owed the "highest duty" to use reasonable care to safely maintain the premises and protect her from unreasonable risk of injury. Plaintiff further claims that Washington Sports breached that duty by: failing to protect plaintiff from dangerous conditions of which they either were aware or should have been aware; failing to use reasonable care in maintaining, supervising and managing the dangers in its facility; and failing to supervise and control its patrons. Finally, plaintiff asserts that defendant's breach was a direct and proximate cause of severe injuries for which plaintiff was compelled to seek medical treatment and which resulted in plaintiff suffering lost wages and diminished earning capacity.

---

[1] Plaintiff also alleges one count of negligence against Defendant William Ellis.

For the reasons set forth herein, the defendant's motion will be granted.

## I. FACTUAL BACKGROUND

On the evening of January 11, 2002, plaintiff attended a Capitals hockey game, with her fiancé (now husband), at the MCI Center ("Center"), owned and operated by Washington Sports. (Pl. Amend. Compl. ¶ 5-6.) Plaintiff sat in the front row of the highest tier of seats, with a railing directly in front of her and her fiancé to her right. Deposition of Sarah W. Brisbin ("Brisbin Dep.") at 15-16. William Ellis was also in attendance that evening, seated several rows above the plaintiff "pretty close to the top" of the arena. Deposition of William Ellis ("Ellis Dep.") at 6, 10. By all accounts, the gradation of the seats at that level is steep and the aisles are narrow. Ellis Dep. at 6; Deposition of Michael Howard Mirch ("Mirch Dep.") at 11, 14-15. There were one or two Center employees in Ellis's and plaintiff's aisle at the start of the evening. (Ellis Dep. at 36.) Generally, the spectators in that section of the Center on the night in question were "pretty normal" for a hockey game and until the close of the first period the section went without incident of any kind. (Mirch Dep. at 30.)

At the end of the first period, during an intermission, plaintiff's fiancé got up for some refreshments, as did Ellis. (Brisbin Dep. at 16; Ellis Dep. at 16.) When Ellis rose from his seat, he turned to his left moving towards the aisle, however before he reached the aisle he was bumped by an unknown person on his left side and lost his balance. (Ellis Dep. at 18, 20.) After losing his balance, Ellis tripped over a seat and fell, sliding back-first down the rows of seats. (*Id.* at 19.) Witness, Michael Mirch, indicated that Ellis's fall was extremely fast, likening it to a toboggan going down the seats. (Mirch Dep. at 11, 25.) Ellis is uncertain how many rows he went over, before ultimately landing on top of the plaintiff. (Ellis Dep. at 21-23.) Plaintiff's

only indication of a commotion was when she heard "a shuffle" behind her, moments before Ellis landed on her. (Brisbin Dep. at 17.) Plaintiff had been in a seated position, but the force of Ellis's fall pushed her forward so that her face touched her knees. (*Id.* at 19; Mirch Dep. at 12.) After the impact, Ellis, a 250-pound man, lay on plaintiff's back for under a minute and then slid off to her right side. (Brisbin Dep. at 20-21; Ellis Dep. at 21.)

After Ellis slid off the plaintiff, she sat back in her seat and experienced "horrible pain" from her shoulders to her hips, was shaking, and generally "hurt everywhere." (Brisbin Dep. at 21-22.) Ellis was able to get up from the fall without assistance, but suffered from intense pain "all over." (Ellis Dep. at 24.) After apologizing to the plaintiff and indicating help was coming, Ellis went to a lower level and began moving around in order to determine if he had any broken bones. (*Id.* at 25-27.) Having witnessed the "violent hit" and being trained in first-aid, Mirch went to the plaintiff and supported her neck and head from behind, while they waited for the Center's security and medical personnel to arrive. (Mirch Dep. at 15-16.)

A Center employee (her specific job title is unknown) arrived with a radio shortly thereafter, however it took the Center's medical staff about fifteen minutes to arrive with a backboard for transporting the plaintiff. (Brisbin Dep. at 25.) Plaintiff did not receive any treatment in the stands, but was taken to a small room at the Center for care, where in addition to being treated she was questioned for an incident report. (*Id.* at 28-29.) Plaintiff was ultimately transported by ambulance to Providence Hospital, where she was x-rayed and evaluated. (*Id.* at 31.) Since the accident, plaintiff has undergone extensive medical care for her injuries, suffered tremendous pain, and endured physical limitations. (*Id.* at 36-84.)

## II. DISCUSSION

### A. Legal Standard

The Court must grant summary judgment where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c). While the moving party bears the burden of demonstrating a lack of genuine issues of material fact, *Rule 56* further requires that the non-moving party "go beyond the pleadings by [entering evidence] showing there *is* a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-324 (1986) (emphasis added). The presence of disputed facts by itself is insufficient to defeat summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). An issue of material fact qualifies as genuine only if there is evidence on which a jury could base a verdict for the non-moving party. *Id.* at 248.

If the moving party is successful, that party is entitled to summary judgment as a matter of law, if the opposing party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. In making this determination, the Court must view all inferences "in the light most favorable to the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-588 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)).

### B. Theories Barred Due to Plaintiff's Failure to Establish the Applicable Standard of Care

#### 1. Plaintiff is Barred from Pursuing a Negligent Design Theory

Under District of Columbia law, the plaintiff bears the burden of [1] establishing the

applicable standard of care, [2] deviation from that standard by the defendant, and [3] a causal connection between the deviation and the plaintiff's injuries. *Griggs v. Wash. Metro. Area Transit Auth.*, 2002 U.S. Dist. LEXIS 18413 (D.D.C. 2002).  It is incumbent on the plaintiff to provide expert testimony supplying the standard of care by which to gauge the defendant's actions "if the subject in question is so distinctly related to some science, profession or occupation as to be beyond the ken of the average layperson." *District of Columbia v. Arnold & Porter*, 756 A.2d 427, 433 (D.C. 2000).  Conversely, no expert testimony is required where the standard falls "within the realm of common knowledge." *Id.*

Plaintiff asserts that testimony from Ellis's deposition, "regarding the narrow aisles and close proximity of the seats to each other," supports her negligence claim and thereby creates an issue of fact for the jury. (Opp'n to Supp. Mot. Summ. J. ¶ 4.) Fatal to this assertion is the fact that plaintiff has not filed a Rule 26(b)(4) statement identifying an expert prepared to establish the appropriate standard of care Washington Sports should have met based on the Center's physical layout. FED. R. CIV. P. 26(b)(4).[2]

On the record before the Court, it is clear that it is beyond the common knowledge of jurors to determine, based on evidence of the Center's physical layout, what standard of care Washington Sports had a duty to exercise in the maintenance, supervision and management of its facility.  Plaintiff admitted that even she, herself, does not know how Washington Sports was

---

[2] Plaintiff's request for an inspection of the Center by an undesignated expert was untimely since it was made on the day discovery closed and Rule 34(b) allows defendant 30 days to initially respond, which was beyond the discovery cut-off.  In any event, Washington Sports had no duty to allow an undesignated expert to inspect their premises.  FED. R. CIV. P. 34(b). (*See* Mem. and Order Den. Mot. to Compel Disc. ¶ 6.)

responsible for her injuries.[3] (Brisbin Dep. at 91-93.)  Without an appropriate standard of care being delineated by an engineering or safety expert familiar with arena seating, the jury would be forced to engage in speculation as to how Washington Sports was deficient in managing the alleged dangers in their facility.  This sort of speculation is specifically prohibited by the District of Columbia Court of Appeals.  *Griggs*, 2002 U.S. Dist. LEXIS 18413 (citing Toy v. District of Columbia, 549 A.2d 1 (D.C. 1988)).

Plaintiff is unable to establish the applicable standard of care under a negligent design theory.  Consequently, it is impossible for her to prove negligent design and she is therefore barred from asserting that claim.  *Griggs*, 2002 U.S.Dist. LEXIS 18413 (citing *Nat'l Tel. Coop. Ass'n v. Exxon Mobil Corp.*, 244 F.3d 153, 154-55 (D.C. Cir. 2001)).

**2. Plaintiff is Barred from Pursuing a Negligence Theory Based on Crowd Control**

As stated above, in order to prevail on a negligence theory where the subject matter is beyond the scope of a juror's common knowledge, the plaintiff must establish the appropriate standard of care through the testimony of an expert.  *Arnold & Porter*, 756 A.2d at 433.  Under *Hill v. Metro. African Methodist Episcopal Church*, the District of Columbia Court of Appeals considered the necessity of having an expert testify regarding the standard of care for crowd control when a large congregation exits a church.  779 A.2d 906 (D.C. 2001)**.**  The Court determined that:

> without the expert testimony of one familiar with such considerations, the jury would be left to sheer speculation as to various types of

---

[3] While this statement was made previous to the close of discovery, plaintiff's statement was based on her perception at the time of her deposition, during which she demonstrated that she had ample opportunity as a lay person to both observe and draw conclusions about the Center's layout. (Brisbin Dep. at 13-16.)

> crowd control, what level of measures is generally accepted as reasonable in such circumstances, and the relation of such measures to possible mishaps in the exiting process. ...*The standard of care for crowd control in exiting large gatherings is indeed in our judgment..."beyond the ken of the average layperson."*

*Id.* at 910 (citation omitted)(emphasis added).

While plaintiff designated an expert in facilities management, "to provide expert testimony in the areas of management, staffing, and security of sports facilities and at sporting events as well as crowd management at such facilities and events," no opinion or evidence regarding crowd control has been placed on the record. In fact, there is no affidavit, report, or indication of any kind that the designated expert had, at the close of discovery, undertaken any assessment of either the incident or the Center. Thus, even though plaintiff designated a crowd control expert, she has provided no opinion or information from which a reasonable juror could extract the appropriate standard of care.

The decision of whether a plaintiff's failure to proffer an expert opinion merits granting summary judgment is "quintessentially a discretionary call of the trial court." *Cf. Wagner v. Sellinger*, 847 A.2d 1151, 1158 (D.C. 2004). Without a standard of care by which to measure Washington Sports' crowd control, no reasonable juror could conclude that they were negligent. Therefore, plaintiff's failure to provide an expert opinion regarding crowd control is fatal to any negligence theory resting on that claim.

Further, even if plaintiff's failure to provide an expert opinion was not definitive, summary judgment must be granted on this issue as there is absolutely no evidence from which a jury could conclude Washington Sports breached its duty of reasonable care under the circumstances. *See Celotex Corp.*, 477 U.S. at 323-324. According to Mirch, the crowd on the

evening in question was "pretty normal." (Mirch Dep. at 30.) He did not observe any fights or commotion prior to Ellis's fall. (*Id.*) While he did get splashed with a considerable amount of beer in the activity surrounding Ellis's fall, there was no indication that any type of fighting was involved. (*Id.* at 22.)

Without any evidence to suggest that there were problems with the crowd, it is impossible that a reasonable juror would conclude Washington Sports was negligent either in supervision of their patrons or crowd management. Therefore, summary judgment must be granted in favor of Washington Sports.

**C. Applicable Standard of Care: Reasonable Under All of the Circumstances**

In the District of Columbia, a plaintiff alleging negligence must show the following elements: (1) defendant owed plaintiff a duty of care and breached that duty; (2) plaintiff's injury was proximately caused by the breach; and (3) as a result plaintiff suffered damages. *Ver Standig v. John F. Kennedy Ctr. for the Performing Arts*, 2005 U.S. Dist. LEXIS 4644 (D.D.C. 2005). For purposes of the present motion, Washington Sports argues that plaintiff has failed to demonstrate the first element.

Common law distinctions between invitees and licensees have been abolished in the District of Columbia based on the grounds that they are outdated and nearly obliterated by exceptions. *Sandoe v. Lefta Assocs.*, 559 A.2d 732, 739-740 (D.C. 1988). Current law requires an owner and operator of property to exercise "reasonable care under all of the circumstances" to any person lawfully on his premises. *Sandoe*, 559 A.2d at 738 (citing *Holland v. Baltimore & Ohio R.R. Co.*, 431 A.2d 597, 599 (D.C. 1981) (en banc); *Blumenthal v. Cairo Hotel Corp.*, 256 A.2d 400, 402 (D.C. 1969); *District of Columbia Transit Sys., Inc. v. Carney*, 254 A.2d 402, 403

(D.C. 1969); *District of Columbia v. Mitchell*, 533 A.2d 629, 639 (D.C. 1987); *Sinai v. Polinger Co.*, 498 A.2d 520, 529-30 & nn. 15 & 16 (D.C. 1985); *Morgan v. District of Columbia*, 449 A.2d [**19] 1102, 1109 (D.C. 1982); *Washington Metropolitan Area Transit Auth. v. Ward*, 433 A.2d 1072, 1074 (D.C. 1981) (Ferren, J., concurring); *Morrison v. MacNamara*, 407 A.2d 555, 560 (D.C. 1979); *Matthews v. District of Columbia*, 387 A.2d 731, 734 (D.C. 1978); *Smith v. Arbaugh's Restaurant, Inc.*, 152 U.S. App. D.C. 86, 89, 469 F.2d 97, 100 (1972)).

To determine whether the duty of reasonable conduct under all of the circumstances has been met, this Court must balance the likelihood and seriousness of the potential injury, "against the interest which [the landowner] must sacrifice to avoid the risk." *Arbaugh's*, 469 F.2d at 105-06 (quoting *Conway v. O'Brien*, 111 F.2d 611, 612 (2d Cir. 1940) (L. Hand., J.)). It is important to note that landowners are not required to "assume burdens of care which are unreasonable in the light of the relative expense and difficulty to them as weighed against the probability and seriousness of the foreseeable harm to others." *Id.* at 106 n.49 (quoting *Daisey v. Colonial Parking, Inc.*, 331 F.2d 777, 780 (1963)).

**1. Plaintiff Fails to Identify a Foreseeable Unreasonable Risk**

"[I]n a negligence case, the plaintiff must produce evidence from which a reasonable juror may conclude that a certain hazard caused the injury and that the defendant had actual or constructive notice of that hazard," in order to create a question for the jury regarding breach. *Ver Standig*, 2005 U.S. Dist. LEXIS 4644 (quoting *Marinopoliski v. Irish*, 445 A.2d 339, 340 (D.C. 1982)). In the present case, aside from the barred theories of negligent design or crowd control, plaintiff has not identified any foreseeable unreasonable risks that could prompt a jury to find Washington Sports was negligent in their maintenance and management of the Center.

9

Beyond making conclusory allegations,[4] no where in the record does plaintiff point to specific conduct or failures on the part of Washington Sports that could have contributed to this unfortunate accident.  Further, plaintiff points to no hazardous conditions, of which Washington Sports knew or should have known, that could have resulted in her injuries.  The only danger pointed to is the occurrence of the incident itself: the risk of one patron falling onto another.

It is undisputed that Washington Sports owed the plaintiff a duty of reasonable care under all of the circumstances.  *See Ver Standig*, 2005 U.S. Dist. LEXIS 4644; *Sandoe*, 559 A.2d at 738.  Considering the likelihood and seriousness of the incident, while a fellow patron plummeting like "a toboggan going down the back of seats" into another patron seems farfetched, a reasonable juror may conclude a fall is foreseeable and likely to cause varying levels of injury.  This determination, however, must then be balanced against the interest Washington Sports would be required to sacrifice in order to protect its patrons from this risk.  *Sandoe*, 559 A.2d at 738.  Not even the plaintiff is able to identify anything Washington Sports could have done differently, in terms of either facility management or maintenance,[5] that would have prevented this collision.  As a result, it is impossible to complete the required interest balancing test to determine if the standard of care was met because there is no evidence Washington Sports neglected to take any necessary precautionary measures.

Therefore, as no reasonable juror could conclude that Washington Sports breached their

---

[4] Plaintiff asserts several times on the record the existence of "dangerous conditions," however she fails to identify those conditions with any degree of specificity.

[5] Plaintiff argues "there were no railings or other safety devices to protect fans...from the dangers of another person falling or being pushed onto them," however this argument is unavailing as plaintiff is barred from pursuing a negligent design theory.

duty of reasonable care under all of the circumstances, summary judgment must be granted.

### III. CONCLUSION

For the foregoing reasons, this Court concludes that the defendant has met its summary judgment burden. Accordingly, and for the reasons stated herein, Washington Sports' motion for summary judgment is hereby GRANTED.

A separate Order shall issue this date.

Signed by Royce C. Lamberth, United States District Judge, February 21, 2006.